## PARKS vs. ALTA TELEGRAPH COMPANY.

*Sixth Judicial District Court, July,* 1857.

### TELEGRAPH COMPANIES.

Telegraph Companies must be regarded as common carriers of messages, and subject to most, if not all, the provisions of the common law of carriers.

It seems that a Telegraph Company will be held liable for damages, upon the wrongful transmission of a message.

The facts are fully reported in the opinion which was delivered upon the demurrer to the complaint.

*G. Cadwallader,* for plaintiff.

*Hartly & Carter,* for defendant.

MONSON, J.—It appears from the complaint in this case, that defendants are engaged in transmitting messages, by telegraph, between Mokelumne Hill, and the city of Stockton, for which they charge and receive a certain pecuniary consideration. Plaintiff alleges that on the 7th day of October last, the defendants, in consideration of a sum of money paid to them, received from plaintiff a message, at the Mokelumne Hill Office, and agreed to deliver the same at Stockton with promptness and dispatch. The complaint then charges a breach of this contract; alleges negligence on the part of the defendants, and a loss in consequence to plaintiff of $2000. The defendants have demurred to the complaint and deny their liability.

How far telegraph companies are liable for a violation of their contract in the delivery of messages, has, as yet, I believe, never been decided; or if decided, not reported. I have been unable to find a reported case in which the question has been examined. This is undoubtedly owing to the fact that Telegraph Companies are but of recent date.

In a work entitled Shaffner's Telegraph Companion, is published the answers to questions propounded by Mr. Shaffner to telegraphic and scientific gentlemen in Europe. Question No. 62, page 178, reads,

"Have you ever paid damages by errors in messages, and has the responsibility ever been tried at law, and if so, please give the case."

It is answered by Edward B. Bright, Esq., Secretary of the English and Irish Magnetic Telegraph Company, Liverpool, England. He says (see page 213): "We have never lost damages in any court.— The question of responsibility has been occasionally tried. The most recent case is one in which the British Telegraph Company were implicated.

"A manufacturing firm in Paisley having lately sent a message by telegraph to their London agent, 'Return all printed squares above five shillings,' and the message having been delivered with the word 'scarfs' substituted for 'squares,' which led to two days delay in the squares arriving in Paisley, the manufacturer brought a small debt action against the Telegraph Company and their agent for £12 damages, as loss sustained by them in consequence. The defendant denied liability, pleading the message order as a special contract, which contained a condition declaring that they would not be liable for mistakes. The sheriff took the case under advisement for a week, and then pronounced his decision sustaining the defense.

"Legal advisers, as a rule, do not like bringing forward such cases in the face of such conditions subscribed to by their clients upon the company's paper.

"I consider," says Mr. Bright, "that a claim cannot be well established, except in a case of a repeated or insured message, as a claimant would be met with, 'why did you not insure if your message was of such consequence,' seeing that the company has a special provision for such cases. And in case of any mistake, or non-delivery of an insured message, the company would be willing to pay, upon proof, without going to law."

It will be seen that Mr. Bright admits the liability of telegraph companies in England, in the case of any mishap, or non-delivery of an insured message, and the reason given why they are not liable in the case of an uninsured message is, because it is expressly stipulated by the company, and subscribed to by the party sending the message, that the company shall not be liable; it is made a part of the contract. In the absence of such a condition, I think the company would have been held liable. The defendants here hold themselves out to the public as

prepared to receive, transmit and deliver all messages between Mokelumne Hill and the city of Stockton; it is their public business and employment; they demand and receive a large compensation for the service rendered, and it receives its value alone from its accuracy and dispatch. Great trust and confidence have to be placed in the compa. ny by those transmitting messages, and their *mala fides* would be difficult of detection. As a legal consequence, then, must they not be regarded as common carriers of messages, and subject to most, if not all, the provisions of the common law applicable to carriers? The office of Post Master was an ancient common law office, exercisable by any and all persons, and against whom any person had his remedy for any damage that happened through their default. The common law knew no distinction in respect to the liability of a common carrier between a letter and any other thing. A private Post Master was precisely in the situation of any other carrier. [Angell on carriers, pp. 118, 103 and 112.]

I must overrule the demurrer, with leave to defendants to answer within ten days upon payment of costs.